# EXHIBIT 1

# BRYAN CHAPMAN EMPLOYMENT AGREEMENT

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT (this "Agreement") is dated 03/20/2023 (the "Effective Date") between **WEST SHORE HOME, LLC**, a Pennsylvania limited liability company ("WSH" or "Company"), and Bryan Chapman, an adult individual ("Employee"), (together, the "Parties" and each a "Party").

## BACKGROUND

A. WSH is a home remodeling platform that specializes in bath and shower, window, and door replacements (collectively, the "Business").

B. WSH desires to continue to employ Employee, and Employee is willing to continue to make his services available to WSH on the terms and conditions set forth below.

## AGREEMENT

In consideration of the foregoing background and the mutual agreements contained herein, and other good and valuable consideration, including WSH providing Employee with Confidential Information, training, and a Signing Bonus, the Parties, intending to be legally bound, hereby agree as follows:

1. **Employment; Position and Duties**. WSH hereby employs Employee and Employee hereby accepts employment with WSH, on an "at will" basis and pursuant to the terms and conditions of this Agreement, to serve as *Vice President of Supply Chain* based out of one of WSH's Mechanicsburg, Pennsylvania, locations, unless otherwise specified by WSH. Employee shall report to the Chief Operating Officer, but this is subject to change at the sole discretion of WSH. The term of Employee's employment with WSH under this Agreement shall begin on the Effective Date and shall continue unless either Party earlier terminates this Agreement in accordance with Section 4 below (the "Term"). During the Term, Employee faithfully and to the best of his ability, shall perform the duties of such position and agrees to devote substantially all of his business time, effort, skill, and attention to the proper discharge of such duties and any other duties assigned to Employee while employed by WSH. Employee further agrees not to engage in any other gainful occupation without the prior consent of WSH while employed with WSH. A copy of the role description for Employee's position is available to review upon request.

    (a) **Representation and Warranty**. Employee represents and warrants to WSH as follows: (i) Employee's employment with WSH will not conflict with, result in the breach of any provision of, or constitute a default under, any agreement to which Employee is a party or is otherwise bound, including any existing or previous employment contract; (ii) Employee is not and will not be in contravention or breach of any non-compete or similar agreement entered into with any previous employer; and (iii) Employee has not improperly retained or confiscated any customer lists, trade secrets, confidential information, intellectual property, or other client, customer, vendor, employee, or product information from any previous employer.

A7581169:1                                 1

2. Compensation and Expense Reimbursement.

(a) Base Salary. During the Term, Employee shall receive from WSH an annual base salary of $220,000.00 (the "Base Salary"), payable in accordance with the regular payroll practices of WSH, pro-rated for any partial year during the Term. WSH reserves the right to change Employee's Base Salary at any time.

(b) Signing Bonus. In consideration for signing this Agreement and agreeing to be bound by the terms and conditions hereof, Employee shall receive a signing bonus in the gross amount of $10,000.00, subject to all required taxes and withholdings, to be paid within thirty (30) days following Employee's execution of this Agreement ("Signing Bonus").

(c) Reimbursement for Reasonable Business Expenses. WSH shall pay or reimburse Employee for reasonable expenses incurred by Employee in connection with the performance of his duties pursuant to this Agreement and approved in advance by Employee's direct supervisor, including but not limited to travel expenses, expenses in connection with seminars, professional associations, training, or credits for professional licensure maintenance, annual license fees, and other reasonable business expenses, in accordance with WSH's documented policies and procedures.

3. Benefits. Employee shall be entitled to participate in the group health insurance benefits and fringe benefits regularly enjoyed by other full-time employees of WSH under the terms and conditions of the fringe benefits and the health insurance benefits plans.

4. Termination of Employment.

(a) Termination by WSH. WSH shall have the right to terminate Employee's "at will" employment at any time with or without cause or notice. If WSH terminates Employee's employment, Employee shall only be entitled to: (i) any Base Salary earned but not yet paid; (ii) reimbursement of any unpaid business expenses incurred in accordance with this Agreement by Employee prior to the effective date of the termination of Employee's employment; and (iii) any other benefits accrued and vested through the date of such termination in accordance with the applicable plans and programs of WSH, provided however, that, subject to any applicable law, WSH shall have the right to set off any amounts due to WSH from any amounts due to Employee. Employee shall not be entitled to payment of any bonuses.

(b) Termination by Employee. Employee shall have the right to terminate Employee's "at will" employment at any time but shall endeavor to provide at least two (2) weeks' notice of resignation to WSH. In such event, Employee shall only be entitled to: (i) any Base Salary earned but not yet paid; (ii) reimbursement of any unpaid business expenses incurred in accordance with this Agreement by Employee prior to the effective date of the termination of Employee's employment; and (iii) any other benefits accrued and vested through the date of such termination in accordance with the applicable plans and programs of WSH, provided however, that, subject to any applicable law, WSH shall have the right to set off any amounts due to WSH from any amounts due to Employee. Employee shall not be entitled to payment of any bonuses.

(c) Effect of Termination. The rights and duties of the Parties under Sections 5, 6, and 7 of this Agreement shall survive the termination of this Agreement.

5. <u>Non-Competition and Non-Solicitation</u>.  Employee acknowledges and agrees that the contacts and relationships of WSH and its affiliates (including its parent and subsidiaries) with their customers, suppliers, vendors, licensors, and other business relations are, and have been, established and maintained at great expense and provide WSH and its affiliates with a substantial competitive advantage in conducting their business. Employee acknowledges and agrees that by virtue of Employee's employment with WSH, Employee will have unique and extensive exposure to and personal contact with WSH's and its affiliates' customers and other business relations, and that Employee will be able to establish a unique relationship with those persons that will enable Employee, both during and after employment, to unfairly compete with WSH and its affiliates. Furthermore, the Parties agree that the terms and conditions of the following restrictive covenants are reasonable and necessary for the protection of the business, trade secrets, and Confidential Information of WSH and its affiliates and to prevent great damage or loss to WSH and its affiliates as a result of action taken by Employee. Employee acknowledges and agrees that the Non-Competition, Non-Solicitation, and nondisclosure of Confidential Information restrictions contained in this Agreement are reasonable and the consideration provided for herein, including WSH providing Employee with Confidential Information and training, is sufficient to fully and adequately compensate Employee for agreeing to such restrictions.

(a) <u>Non-Competition</u>. During Employee's employment and for a period of twenty-four (24) months following the termination of Employee's employment, for any reason, Employee shall not, directly or indirectly (including, but not limited to, Employee providing services and/or entering into an arrangement with a private equity firm or other financial sponsor that has a direct or indirect interest in a Competing Business), own, manage, control, participate in, consult with, render services for, be employed by, represent, or have any other affiliation with any business or other entity that competes directly or indirectly with any business or business activity conducted by WSH (a "Competing Business"). For the avoidance of doubt, a Competing Business is any business in the United States that sells or offers any product and/or service that is competitive with any product and/or service offered by WSH at any time (including but not limited to bathroom remodeling services and/or window or door replacement services), or any business that develops technological solutions, software, or applications for a Competing Business, or provides advertising, marketing, or lead generation services to a Competing Business. Nothing herein shall prohibit Employee from being a passive owner of not more than 5% of the outstanding stock of a Competing Business which is publicly traded, so long as Employee has no active participation in the Competing Business.

(b) <u>Non-Solicitation</u>. During (i) Employee's employment with WSH and (ii) for a period of twenty-four (24) months from the date that Employee's employment with WSH terminates for any reason (the "Restricted Period"), Employee shall not directly or indirectly: (i) facilitate, induce or attempt to induce any employee of WSH to leave the employ of WSH, or in any way interfere with the relationship between WSH and any employee thereof; (ii) hire or contract for services from any person who was an employee of WSH at any time during Employee's employment with WSH; (iii) encourage any customer, potential customer, contractor, consultant, vendor, or supplier to terminate their relationship with WSH or otherwise interfere with the relationship between any customer, contractor, consultant, vendor, or supplier and WSH; or (iv) communicate with, solicit or induce, or in any manner attempt to solicit or induce any individual or entity who is a customer or potential customer of WSH in any manner which is intended to (A) divert business from WSH, (B) interfere with a customer or potential customer relationship of WSH, (C) accept any business from such customer or potential customer, or (D) otherwise attempt to provide services to the customer or potential customer similar to those provided by WSH. A potential customer is any customer that has contacted WSH to

inquire about good or services, or any customer who WSH has contacted to offer goods or services, within the 12-month period prior to the termination of Employee's employment with WSH for any reason. Employee expressly agrees that during the Restricted Period, Employee will not solicit, negotiate, or accept an offer of employment or otherwise provide services, employment, consulting, or similar services, in any manner, to or for any customer of WSH.

      6.    <u>Confidential Information; Inventions and Patents</u>.

      (a)    <u>Confidential Information; Samples and Other Materials</u>. Employee acknowledges and agrees that the Company's strategic initiatives; business plans and strategies; operations; know-how; training programs, methods, manuals, and materials; leadership and development programs, manuals, and materials; warehousing strategies and logistics operations; HR policies, processes, and procedures; research and development; installation processes, procedures, and techniques; templates; samples; products and materials and how and why the Company uses specific products and materials; sales system, processes, procedures, and manuals; marketing and lead generation partners, strategies, methods, and tracking; recruiting methods and strategies; vendors, vendor lists, and terms of vendor agreements; suppliers, supplier lists, and terms of supplier agreements; inventory and inventory strategies, processes, and procedures; distribution strategies, plans, processes, and procedures; costs, margins, and pricing; supply chain; customer information; employee information (including but not limited to employee contact information and compensation); organizational structure; five star review process; reports; presentations; handbooks; manuals; SOPs; photos and videos; technology; KPIs; financial information; financial planning and analysis; accounting information; proprietary information; other nonpublic aspects of and information about the business of WSH and its affiliates; and any information on Employee's personal device(s) that belongs to the Company (the "<u>Confidential Information</u>") are and/or were established at great expense and protected as confidential information and provide WSH and its affiliates with a substantial competitive advantage in conducting their business. Employee further acknowledges and agrees that by virtue of Employee's employment with WSH, Employee will have access to, and has been entrusted with and will be entrusted with, Confidential Information, and that WSH and its affiliates would suffer great loss and injury if Employee would disclose this information or use it in a manner not specifically authorized by WSH. Therefore, Employee agrees that during the period in which the Employee is employed by WSH and for three (3) years thereafter, Employee will not, directly or indirectly, either individually or as an employee, agent, partner, shareholder, owner, trustee, beneficiary, member, manager, co-venturer, distributor, consultant, contractor, or in any other capacity, use or disclose or cause to be used or disclosed any Confidential Information. Notwithstanding the foregoing, nondisclosure obligations and restrictions on use with respect to any Confidential Information that constitutes a trade secret shall continue in effect for so long as the Confidential Information remains a trade secret under applicable law.

      (b)    <u>Return of Confidential Information and other WSH Property</u>. Employee agrees to return to WSH immediately upon termination of Employee's employment under this Agreement any and all copies of Confidential Information in Employee's possession or control, whether in hard copy, electronic, or any other form, and all other property of WSH in Employee's possession.

      (c)    <u>Intellectual Property</u>. Employee acknowledges that all inventions, innovations, improvements, developments, methods, strategies, designs, analyses, drawings, reports, and all similar or related information (whether or not patentable) which relate to WSH's actual or

anticipated business, growth, research, and development or existing or future products or services or opportunities and which are conceived, developed, or made by Employee while employed by WSH ("Work Product") belong to WSH. Employee shall promptly disclose such Work Product to the CEO and, at WSH's expense, perform all actions reasonably requested by the CEO (whether during or after the Term) to establish and confirm such ownership (including, without limitation, assignments, consents, powers of attorney, and other instruments).

Employee's obligations under this Agreement with respect to Intellectual Property and Work Product continue after the termination of this Agreement. Employee acknowledges that Employee has no discoveries, improvements, inventions, and works or applications for patents or any interest therein that are excluded from this Agreement.

      7.    <u>Miscellaneous</u>.

          (a)    <u>Non-Disparagement</u>.  Employee agrees not to disparage WSH, any of its products or practices, any of its directors, officers, agents, representatives, employees, or affiliates, either orally or in writing, at any time; provided that, Employee shall not be required to make any untruthful statement or to violate any law.

          (b)    <u>Specific Performance</u>.  Employee acknowledges and agrees that irreparable injury to WSH may result in the event Employee breaches any covenant or agreement contained in Sections 5 or 6 and that the remedy at law for the breach of any such covenant will be inadequate. Therefore, if Employee engages in any act in violation of the provisions of Sections 5 and/or 6, Employee agrees that WSH shall be entitled, in addition to such other remedies and damages as may be available to it by law or under this Agreement, to seek injunctive relief to enforce the provisions of Sections 5 and 6.

          (c)    <u>Withholding Taxes</u>.  To the extent required by applicable law, all payments to Employee or Employee's beneficiary hereunder shall be subject to withholding on account of federal, state, and local taxes, and other customary or required deductions. If any payment hereunder is insufficient to provide the amount of such taxes required to be withheld, WSH may withhold such taxes from any other payment due Employee or Employee's beneficiary.

          (d)    <u>Waiver</u>.  The failure of either Party to insist in any one or more instances, upon performance of the terms or conditions of this Agreement shall not be construed as a waiver or a relinquishment of any right granted hereunder or of the future performance of any such term, covenant, or condition.

          (e)    <u>Notices</u>.  Any notice to be given hereunder shall be deemed sufficient if addressed in writing and delivered by registered or certified mail or delivered personally, in the case of WSH, to its principal business office, and in the case of Employee, to Employee's address appearing on the records of WSH or to such other address as Employee may designate in writing to WSH.

          (f)    <u>Severability</u>.  In the event that any provision of this Agreement shall be held to be invalid or unenforceable for any reason whatsoever, it is agreed that such invalidity or unenforceability shall not affect any other provision of this Agreement and the remaining covenants, restrictions and provisions hereof shall remain in full force and effect and any court of competent

jurisdiction may so modify the objectionable provision as to make it valid, reasonable, and enforceable. Furthermore, the Parties specifically acknowledge the above covenant not to compete and covenant not to disclose Confidential Information are separate and independent agreements.

(g)     Complete Agreement.  Except as otherwise expressly set forth herein, this document, the schedules and exhibits attached hereto, and any documents or agreements incorporated by reference herein, embody the complete agreement and understanding among the Parties hereto with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements, or representations by or among the Parties, written or oral, including any prior employment agreement executed by Employee, which may have related to the subject matter hereof in any way.

(h)     Amendment.  This Agreement may only be amended by an agreement in writing signed by each of the Parties hereto.

(i)     Governing Law, Jurisdiction.  This Agreement shall be governed by and construed exclusively in accordance with the laws of the Commonwealth of Pennsylvania, regardless of choice of law requirements.  In the event a dispute or claim should arise regarding this Agreement, jurisdiction and venue of any such action shall be in the courts of Pennsylvania or, in the event that the Parties to this Agreement have diverse citizenship and/or the dispute involves a federal question of law, in the United States District Court for the Middle District of Pennsylvania. Each Party expressly consents to the jurisdiction and venue set forth in this Section.

(j)     Assignment; Benefit.  This Agreement shall be binding upon and inure to the benefit of and shall be enforceable by and against WSH, its successors and assigns, Employee, and Employee's heirs, beneficiaries, and legal representatives. In addition, this Agreement and all rights, duties, and obligations hereunder may be assigned by (or pursuant to) (i) an assignment to an affiliate of WSH, (ii) a merger or consolidation in which WSH is not the surviving entity, or (iii) a sale or liquidation of all or substantially all of the assets of WSH. No obligations of Employee under this Agreement may be assigned or transferred by Employee.

(k)     Counterparts.  This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument and delivered in person. Signatures delivered by facsimile or in portable document format ("pdf") shall be binding for all purposes hereof.

**[Signature page follows]**

IN WITNESS WHEREOF, the Parties have executed or caused this Employment Agreement to be executed as of the Effective Date.

**COMPANY**:

**WEST SHORE HOME, LLC**

By: *[signature: Shannon C. Gierasch]*

Shannon C. Gierasch, General Counsel

**EMPLOYEE**:

*[signature: Bryan Chapman]*

Bryan Chapman

A7581169:1