## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| WEST SHORE HOME, LLC,<br><br>         *Plaintiff,*<br><br>  v.<br><br>BRYAN CHAPMAN,<br><br>         *Defendant.* | Civil Action No. 1:23-cv-01669-SHR<br><br><br>(Hon. Sylvia H. Rambo) |

### JOINT CASE MANAGEMENT PLAN

**1. Principal Issues**

    1.1    Separately for each party, please give a statement summarizing this case:

        **By plaintiff:**

    During his employment and after plaintiff West Shore Home, LLC terminated it, defendant Bryan Chapman disclosed and used West Shore's confidential business information and trade secrets in violation of his written confidentiality agreement and laws prohibiting misappropriation of trade secrets. Chapman also made false and defamatory statements to West Shore's vendors which, combined with his other disclosures and misconduct, caused him to unlawfully interfere with West Shore's

contractual relationships with those vendors. Accordingly, West Shore sues Chapman for: violating the Defend Trade Secrets Act of 2016 (18 U.S.C. §§ 1831 *et seq.*) and Pennsylvania's Uniform Trade Secrets Act (12 Pa. Cons. Stat. §§ 5301 *et seq.*); and for breach of contract, intentional interference with contract, and defamation. West Shore seeks a permanent injunction to restrain future uses and disclosures of West Shore's confidential business information and trade secrets, and damages, punitive damages, and the other relief set forth in West Shore's complaint.

**By defendant:**

Chapman, during or after West Shore terminated his employment, did not disclose or use West Shore's confidential business information and trade secrets in violation of his written confidentiality agreement and laws prohibiting misappropriation of trade secrets. Moreover, any statements made by Chapman to West Shore's vendors, during or after his termination, were not confidential false and/or defamatory and Chapman did not otherwise interfere with West Shore's contractual relationships with such vendors. Since Chapman's abrupt termination from West Shore, Chapman has been unsuccessful in finding another job. Chapman remains unemployed.

**1.2 The facts the parties <u>dispute</u> are as follows:**

- The home remodeling industry in which West Shore competes is a highly competitive marketplace. Supply chain issues can present challenges.

- West Shore competes for scarce resources and invests time, money, and effort into developing vendor relationships, and any disruption to its relationships would have an impact on its business and profits.

- In his position, Chapman was responsible for overseeing critical supply chain and highly confidential aspects for high volume core materials and products utilized in daily installations in all service areas throughout the country, including strategic purchasing, logistics and inventory management, proprietary strategic initiatives, procuring strategic vendor selections and relationships, and accurate forecasting and analysis of vendor performance.

- Chapman's confidentiality agreement prohibited him from, directly or indirectly, disclosing, using, or causing to be used, West Shore's confidential information and trade secrets.

- Chapman's employment agreement prohibited him from, directly or indirectly, interfering with the relationship between any West Shore customer, contractor, consultant, vendor, or supplier.

- West Shore takes reasonable steps to keep its confidential information secret and ensure its confidentiality, including making information known only to employees who need to know such information to carry out their employment duties and by using a confidentiality agreement as a condition precedent of employment.

- West Shore has invested time, effort, and money into acquisition and development of its confidential information and trade secrets.

- West Shore relies on its confidential information and trade secrets for its success, and such information would be valuable to a competitor.

- At no time did West Shore give Chapman permission to remove, use, or disclose the confidential information or trade secrets for his own benefit or for the benefit of any third party.

- In August 2023, Chapman drafted a one-page "Request for Information" and submitted it to at least 25 West Shore vendors.

- At least one business partner, Confidential Vendor 1, reached out and questioned West Shore's motivations for sending the Request for Information.

3

- The termination letter demanded that Chapman return all West Shore property immediately, including all West Shore information, company documents, notebooks, training materials, tools, electronic devices, and all other West Shore property in his possession.

- The termination letter also instructed Chapman to delete and destroy all unreturned West Shore information and send confirmation of the same.

- On August 31, 2023, Chapman emailed West Shore, and therein accused West Shore of stealing the intellectual property of its competitor and stated: "We can negotiate a severance package over my dismissal, or I can take my allegations public" and "This is going to be a big black eye on America's Most Admired Home [] Improvement Company."

- In his August 31 email, Chapman also admitted to having retained conference call notes and photographs from a West Shore facility.

- Chapman attempted to leverage West Shore's confidential information and trade secrets to receive a severance package for himself and to harm West Shore's business reputation.

- On September 11, 2023, Chapman contacted West Shore business partner, Confidential Vendor 2, over LinkedIn stating, "We need to talk." This was followed by a phone call to Confidential Vendor 2.

- During this phone call, Chapman stated that West Shore had copied a vendor's product design.

- Chapman published a false statement about West Shore when he falsely stated to Confidential Vendor 2 that West Shore had copied a competitor's design.

- On September 13, 2023, Chapman texted Confidential Vendor 2 to ask, "What are you thinking regarding our discussion on Monday?" and "what is your email?" Chapman then emailed Confidential Vendor 2 with an attachment that laid out information Chapman knew about West Shore's business operations.

- On September 15, 2023, Chapman sent an email to West Shore business partner, Confidential Vendor 1, attaching the Request for Information and demanding to know who provided the Request for Information to it originally.

- Chapman disclosed West Shore's confidential information when he sent Confidential Vendor 1 an email attaching the Request for Information.

4

- On September 19, 2023, Chapman followed up his September 15 email to Confidential Vendor 1 to state, "OK, we will do it the hard way through the court system."

- On September 21, 2023, West Shore, through counsel, sent a cease-and-desist letter to Chapman that is attached as Exhibit 2 to the complaint.

- On September 23, 2023, West Shore received a formal notice of a 5% price increase from Confidential Vendor 2. On September 28, 2023, Chapman responded to West Shore's counsel again with the same document that he sent via email to Confidential Vendor 2 on September 13, 2023.

- Chapman retained West Shore confidential information and trade secrets when he retained his notebook with conference call notes, photographs of a West Shore facility, and other documents after his termination.

- Chapman's disclosure of West Shore's confidential information and trade secrets has damaged relationships with West Shore's business partners, including Confidential Vendor 1 and Confidential Vendor 2.

- Continued disclosure of West Shore's confidential information and trade secrets will cause irreparable harm to West Shore by placing it at a competitive disadvantage.

- West Shore has suffered business reputational damage, an increase in pricing from a vendor, and its confidential information and trade secrets have been misappropriated, because Chapman disclosed West Shore's confidential business information and trade secrets.

- West Shore and Confidential Vendor 1 have a contract to conduct business. West Shore also has a contract to conduct business with Confidential Vendor 2.

- As a result of Chapman's intentional interference, West shore has been damaged in the loss of its business reputation and through the 5% price increase from Confidential Vendor 2.

- Chapman was aware of these contracts generally and was specifically aware of West Shore's contracts with Confidential Vendor 1 and with Confidential Vendor 2.

- Chapman was no longer an employee of West Shore when he intentionally interfered with West Shore vendor relationships, nor was he a competitor of West Shore.

- Chapman did not send West Shore a confirmation that he deleted and returned all West Shore information, nor did Chapman return any information or his notebook with notes taken during meetings, prior to when this litigation started.

### **agree** upon are as follows:

- West Shore is a limited liability company, organized under the laws of Pennsylvania, with its corporate headquarters in Mechanicsburg, Pennsylvania.

- West Shore is a home remodeling company that provides bathroom remodeling services and window and door replacement services to residential customers.

- West Shore has approximately 38 locations in 18 states, including Pennsylvania.

- Defendant Bryan Chapman is an adult individual who resides in Ashland, Missouri.

- West Shore hired Chapman on January 18, 2023.  As a condition to his employment, Chapman executed an employment agreement.  On March 20, 2023, for good consideration, Chapman executed his agreement, Exhibit 1 to the Complaint.

- During his employment, Chapman served as Vice President of Supply Chain.

- As Vice President of Supply Chain, Chapman regularly attended and participated in private company meeting and phone calls and Chapman maintained a notebook in which he took notes during these meetings.

- Chapman executed a confidentiality agreement as part of his employment agreement with West Shore.

- In the course of his employment with West Shore, Chapman had access to information, including, but not limited to: vendor information; vendor capacities; vendor contracts; vendor pricing; strategies for sourcing products and components; strategies for supply chain optimization; product development; product testing; product performance; product pricing, costs, and margins; purchasing trends; inventory positions; warehousing plans and strategies; utilization rates for materials; logistics operations and strategies; real estate

strategies relative to supply chain initiatives; critical company projects; technology initiatives; regional operations data and information; inside operations data and information; level loading process; financial planning and analysis; proprietary PDCA data and information; market research; installation policies and procedures; training programs and materials; and expansion plans and strategies.

- West Shore terminated Chapman's employment on August 25, 2023.

- West Shore provided a termination letter to Chapman.

- On September 24, 2023, Chapman sent a reply email to West Shore's counsel stating, "I may not be able to win a legal battle with West Shore, but I can make sure we both lose in the eye of the public" and "The only way I'm going away is with six months of severance pay from West Shore Home."

### 1.3    The legal issues the parties <u>dispute</u> are as follows:

- West Shore's Confidential Information and Trade Secrets constitute "trade secrets" under the Defend Trade Secrets Act of 2016, 18 U.S.C. §§ 1831 et seq. ("DTSA") because it is information that derives independent economic value to West Shore from not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from its disclosure or use. 18 U.S.C. § 1839(3).

- Chapman misappropriated West Shore's confidential information and trade secrets when, on August 31, 2023, he emailed West Shore and stated he retained West Shore's confidential information and trade secrets after his termination, including through photographs and his notebook.

- Chapman misappropriated West Shore's confidential information and trade secrets when, on September 15, 2023, he sent an email to Confidential Vendor 1 attaching the Request for Information.

- Because Chapman's actions in violation of the DTSA have been willful and malicious, West Shore is entitled to an award of exemplary damages and reasonable attorneys' fees.

- The terms of the post-termination covenants included within Chapman's employment agreement are reasonable in their scope and the provisions are necessary to protect West Shore's legitimate business interests.

- Chapman breached his employment and confidentiality agreement by retaining West Shore's confidential information and trade secrets post-termination.

- Chapman breached his employment and confidentiality agreement by disclosing West Shore's confidential information and trade secrets post-termination.

- Chapman breached his employment and confidentiality agreement by interfering with the relationship between West Shore and its vendors and suppliers by sending the Request for Information to Confidential Vendor 1 and by initiating a conversation with Confidential Vendor 2.

- By having a post-termination phone call with Confidential Vendor 2 and emailing it false information, Chapman intentionally interfered in West Shore's contract with Confidential Vendor 2.

- By sending the September 15, 2023, and September 19, 2023, emails to Confidential Vendor 1, Chapman intentionally interfered with West Shore's contract with Confidential Vendor 1.

- Chapman acted with the wrongful purpose of damaging West Shore's business relationships with Confidential Vendor 2 and with Confidential Vendor 1.

- Chapman defamed West Shore when he told Confidential Vendor 2 that West Shore had copied a vendor's product design.

- Though Chapman's defamatory statement to Confidential Vendor 2 is false, it is a serious accusation of intellectual property theft, thereby falsely implicating West Shore in criminal activity and business misconduct, making the statement defamation *per se*.

- Chapman has acted with malice and the intention to harm West Shore's business and its business reputation. Punitive damages are appropriate here where Chapman must have the gravity of the wrong committed impressed upon him and be deterred from future misconduct.

- Injunctive relief is necessary and appropriate to keep Chapman from continuing his misconduct. West Shore has no adequate remedy at law.

**agree upon are as follows:**

None.

8

**1.4    Identify any unresolved issues as to service of process, personal jurisdiction, subject matter jurisdiction, or venue:**  None.

**1.5    Identify any named parties that have not yet been served:**  None.

**1.6    Identify any additional parties that:**

**plaintiff(s) intends to join:**  None at this time but discovery might yield additional parties.

**defendant(s) intends to join:**  None.

**1.7    Identify any additional claims that:**

**plaintiff(s) intends to add:**  None at this time but discovery may yield additional claims.

**defendant(s) intends to add:**  None.

## 2.0    Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

**2.1    Separately for each party, list by <u>name and title/position</u> each person whose identity has been disclosed.**

Disclosed by <u>West Shore</u>:  Philip Brenckle, Chief Financial Officer of West Shore; defendant Bryan Chapman; and third parties reflected on documents produced by Chapman during discovery.

Disclosed by <u>Bryan Chapman</u>:  Witnesses disclosed in initial disclosures exchanged on March 28, 2024, including additional personnel at West Shore and personnel from Confidential Vendor 1 and 2 as referenced in the Complaint.

## 3.0    Early Motions

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:  None at this time.

**4.0    Discovery**

4.1    Briefly describe any discovery that has been completed or is in progress:

       **By plaintiff(s):**    Initial disclosures have been exchanged by both parties.  Plaintiff has propounded 10 requests for production of documents and 9 interrogatories on Chapman, who has responded and produced documents. Subpoenas for documents and testimony have been issued to two third parties whom West Shore will be deposing – one of which was initially deposed on March 25, 2024.  That deposition remains open pending additional discovery.

       **By defendant(s):** Defendant is in the process of preparing discovery to be served on Plaintiff if this matter is not resolved in the short term.

4.2    Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):  The parties agree that West Shore will depose Bryan Chapman to learn the extent of his disclosure of West Shore's confidential information and trade secrets.  The parties agree that representatives of West Shore may be deposed to discuss Chapman's employment, termination, the maintenance of its trade secrets, and its damages. The parties agree that certain third-parties may be deposed to advance West Shore's claims and defendant's defenses.

4.3    Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects</u>, indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:  None at this time as to discovery and subpoenas already served.  The parties reserve the right to object to additional discovery and subpoenas served after the filing of this report.

4.4    Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:  None.

4.5    For each of the following discovery tools, <u>recommend the per-party or per-side limitation</u> (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate

showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

4.5.1  depositions (excluding experts) to be taken by:

plaintiff(s): 10              defendant(s): 10

4.5.2  interrogatories to be served by:

plaintiff(s): 25              defendant(s): 25

4.5.3  document production requests to be served by:

plaintiff(s): 40              defendant(s): 40

4.5.4  requests for admission to be served by:

plaintiff and defendant: unlimited per Rule 36

4.6    Discovery of Electronically Stored Information

Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

## 5.0    Protective Order

5.1    If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

A proposed joint stipulated protective order is attached hereto.

5.2    If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below:

## 6.0    Scheduling

6.1    Final date for joining additional parties:

June 14, 2024, Plaintiff and Defendant

6.2    Final date for amending pleadings:

<u>June 14, 2024,</u> Plaintiff and Defendant

6.3    All fact discovery commenced in time to be completed by:

<u>Thursday, August 30, 2024</u>

6.4    All potentially dispositive motions should be filed by:

<u>Friday, October 11, 2024</u>

6.5    Reports from retained experts due:

from plaintiff(s) by: <u>Friday, August 30, 2024</u>

from defendant(s) by: <u>Friday, September 13, 2024</u>

6.6    Supplementations due

6.7    All expert discovery commenced in time to be completed by: <u>Friday, September 20, 2024</u>

6.8    This case may be appropriate for trial in approximately:

<u>Over 365</u> Days from the filing of the action in this court

6.9    Suggested Date for the final Pretrial Conference:

<u>October 2024</u> (month/year)

6.10   Trial

6.10.1 Suggested Date for Trial:

<u>November 2024</u> (month/year)

**7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual(s) have settlement authority.

**For plaintiff:**

Shannon Gierasch, General Counsel, who may be contacted through undersigned counsel.

**For defendant:**

Jonathan Avolio counsel for Defendant

## 8.0 Alternative Dispute Resolution ("ADR")

8.1    Identify any ADR procedure to which this case already has been assigned or which the parties have agreed to use:    Settlement conference.

8.2    If the parties have been unable to agree on an ADR procedure, but one or more parties believe that the case is appropriate for such a procedure, identify the party or parties that recommend ADR and the specific ADR process recommended:

8.3    If all parties share the view that no ADR procedure should be used in this case, set forth the basis for that view:

## 9.0    Consent to Jurisdiction by a Magistrate Judge

Indicate whether all parties agree, pursuant to 28 U.S.C. § 636(c)(1), to have a magistrate judge preside as the judge of the case with appeal lying to the United States Court of Appeals for the Third Circuit:

All parties agree to jurisdiction by a magistrate judge of this court: No.

## 10.0    Other Matters

Make any other suggestions for the case development process, settlement, or trial that may be useful or necessary to the efficient and just resolution of the dispute.

## 11.0    Identification of Counsel

Counsel shall be registered users of the court's Electronic Case Files System (ECF) and shall file documents electronically in accordance with the Local Rules of Court and the Standing Order RE: Electronic Case Filing Policies and Procedures.  Electronic filing is required unless good cause is shown to

the Chief Judge why counsel cannot comply with this policy. Any request for waiver of electronic filing must be filed with the Clerk's Office prior to the case management conference. The Chief Judge may grant or deny such request.

Identify by name, address, and telephone number lead counsel for each party. Lead counsel for plaintiff: Ari N. Rothman. Lead counsel for defendant: Jonathan Avolio. All counsel below have registered with the Court's ECF system.

Dated: March 28, 2024                   Respectfully submitted,

                                        By: */s/ Ari N. Rothman*
                                        Thomas G. Collins (I.D. #75896)
                                        Sara E. Myirski (I.D. #321113)
                                        **BUCHANAN INGERSOLL & ROONEY PC**
                                        409 North Second Street, Suite 500
                                        Harrisburg, PA 17101
                                        Tel: (717) 237-4800
                                        Email: thomas.collins@bipc.com
                                        Email: sara.myirski@bipc.com

                                        Ari N. Rothman (*pro hac vice*)
                                        **VENABLE LLP**
                                        600 Massachusetts Avenue NW
                                        Washington, District of Columbia 20001
                                        Tel: (202) 344-4000
                                        Fax: (202) 344-8300
                                        Email: anrothman@venable.com
                                        *Counsel for Plaintiff West Shore Home, LLC*

                                        By: */s/ Jonathan Avolio*
                                        Jonathan Avolio (ID #327910)
                                        J AVOLIO LAW PLLC
                                        100 South Juniper St., 3rd Fl.
                                        Philadelphia, PA 19107
                                        (215) 630-8811
                                        javolio@javoliolaw.com
                                        *Counsel for Defendant Bryan Chapman*

14